**IN UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA
CIVIL DIVISION**

| | |
|---|---|
| **JUDITH BLOWE**<br>**P.O. Box 1123**<br>**Lorton, VA 22199**<br><br>  *Plaintiff*,<br><br>  v.<br><br>**SALLY JEWELL,**<br>**SECRETARY, U.S. DEPARTMENT OF**<br>**THE INTERIOR**<br>**1849 C Street, N.W.**<br>**Washington, DC 20240**<br><br>  *Defendant*. | )<br>)<br>)<br>)<br>)  **Case No.: 15-cv-822**<br>)<br>)<br>)  **Jury Trial Demand**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

Plaintiff Judith Blowe, by and through counsel, hereby files this Complaint for violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*., and the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 633a., against Defendant Sally Jewell, Secretary, United States Department of the Interior.

### Jurisdiction and Venue

1.     This court has jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. § 1331, 42 U.S.C. § 2000e *et seq.,* and 29 U.S.C. § 633a.

2.     Plaintiff has exhausted all administrative remedies prior to filing suit.

3.     Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) in that all or some events or omissions giving rise to Plaintiff's claims occurred in this judicial district and Defendant may be found in this judicial district.

**Parties**

4.      Plaintiff Judith Blowe (hereinafter "Plaintiff" or "Ms. Blowe") is an African American female and was forty-six (46) years old at the time of the events giving rise to this Complaint.

5.      Defendant Sally Jewell (hereinafter "Defendant" or the "Agency") is the Secretary of the Department of the Interior, an Agency of the United States government, and an "employer" within the meaning of the statutes under which Plaintiff brings her claims.

**Factual Allegations**

6.      At the times relevant to this Complaint, Judith Blowe (African American female, DOB July 1964) worked for the Agency as a GS-13 Human Resources Specialist in the Finance and Administration Directorate of the Office of Surface Mining, Reclamation, and Enforcement ("OSMRE").  Ms. Blowe's first level supervisor was Yvette Evans (African American female, 48 years old).  Her second level supervisor was Ted Woronka (Caucasian male, 67 years old).

**Downgraded Desk Audit**

7.      In approximately March 2009, Ms. Blowe requested a desk audit because she believed she was performing work at the GS-14 level while she was classified at the GS-13 level.  Mr. Woronka also believed Ms. Blowe was performing work at the GS-14 level.

8.      Brian Harper (African American male), a classifier from the National Park Service of the Department of the Interior, conducted the desk audit.  Mr. Harper's initial conclusion, based on his assessment of Ms. Blowe's work was that Ms. Blowe's work should have been graded at the GS-14 level.  During the desk audit process, Mr. Harper informed Ms. Blowe he would meet with Mr. Woronka and Ms. Evans to confirm her responses.

9.      On two occasions, Ms. Blowe requested Mr. Harper meet with Mr. Woronka concerning the desk audit because Mr. Woronka had been her second line supervisor for more than three

years and was familiar with her additional duties related to new programs that Ms. Blowe helped

develop.  In addition, Ms. Blowe informed him that Marta Kelly, the Program Manager for DOI

LEARN and Learning Management System ("LMS") had knowledge of Ms. Blowe's additional

duties related to DOI LEARN and LMS.  However, Mr. Harper never met with Mr. Woronka or

Ms. Kelly regarding Ms. Blowe's desk audit.

10.    After meeting with Mr. Harper, Ms. Evans advocated to him to keep Ms. Blowe at the

GS-13 grade, by e-mail and in person, even though Ms. Evans had only been Ms. Blowe's

supervisor for approximately four months and had limited knowledge of her duties.  As a result

of Ms. Evans' acts, Mr. Harper changed his mind and rated Ms. Blowe at GS-13.  Mr. Harper

never met with Mr. Woronka regarding Ms. Blowe's desk audit.

11.    Mr. Harper's revised conclusion to keep Ms. Blowe at the GS-13 level was based on false

and misleading information and assessments of her work provided by Ms. Evans.  For example,

Mr. Harper determined that Ms. Blowe did not have enough supervisory control to warrant a

higher rating based on the fact that she lacked program funding authority.  On the contrary,

program funding authority was not one of the measurement criteria to be used in Ms. Blowe's

desk audit.  Mr. Harper actually downgraded Ms. Blowe's rating on supervisory controls from

her original position description rating.  The desk audit failed to take into account that Ms.

Blowe's work was performed on an independent basis with minimal supervision.  Further, she

managed the training office without a first-line supervisor for six months.  Mr. Harper incorrectly

asserted that Ms. Blowe's work with competency models consisted simply of duplicating already

existing work.  Yet, her work on competency models was far more complex than just making

duplicates of existing work.  In addition, Mr. Harper did not take into account that Ms. Blowe

was the primary employee responsible for the creation, design, implementation, execution and

quality control of all developmental programs and she performed this work independently.  The audit also did not include Ms. Blowe's duties related to developing and assessing OSMRE's compliance with its mission critical positions.  She was responsible for analyzing the Position Classification Standards Guide of the Office of Personnel Management ("OPM"), interviewing managers concerning critical positions, reviewing position descriptions and developing competencies for OSMRE's mission critical occupations, and conducting a competency assessment of OSMRE's populations, mission criticality, recruiting difficulty, and bureau responsibilities.  Ms. Blowe also trained supervisors on the use of skill gap analysis tools to evaluate an employee's performance and any skill gaps and provided assistance in bridging skill gaps and gave recommendations for appropriate courses.

12.     In January 2010, Ms. Blowe learned that her position had not been upgraded to GS-14. Shortly thereafter, she filed an appeal of her desk audit, as well as an EEO Complaint in or around April 2010, alleging that Ms. Evans had discriminated against her by providing incorrect information to the desk auditor regarding the level and complexity of work she performed.

13.     In contrast, when Brenda Garrett-Freeman (African American female, 54 years old) was issued a desk audit resulting in her being potentially downgraded to a GS-12 grade, Ms. Evans refused to allow it.  Ms. Evans called the auditor and convinced the auditor to keep Ms. Garrett-Freeman's grade at a GS-13 level.  At the time, Ms. Garrett-Freeman did not have any EEO cases pending against Ms. Evans.

14.     Mr. Woronka asked Ms. Evans to provide her with some of the duties of Lisa Wise-Benz (Caucasian female).  Ms. Evans specifically refused to do so, insisting that Ms. Blowe not be given any of Ms. Wise-Benz's duties.

15.     Ms. Evans also sought to take away job duties from Ms. Blowe to ensure that she would stay at a lower grade.  Before Ms. Evans arrived in her position, Ms. Blowe personally briefed the Executive Council on her program areas.  After Ms. Evans began in her position, she took the briefing duties from Ms. Blowe and personally performed them.  In contrast, Ms. Evans has never taken Ms. Wise-Benz's duties related to personally briefing the Council on her program areas.  Next, while Ms. Blowe was the Agency training officer, Ms. Evans attempted to take credit for these duties and asserted that she was the Agency's training officer.  Further, Ms. Evans credited Ms. Wise-Benz for being the Human Capital Specialist in the office, even though Ms. Blowe had significant involvement in the Agency human capital and workforce planning initiatives.  Ms. Evans also delegated the responsibility of personnel security suitability adjudicator to an employee other than Ms. Blowe.  Although Ms. Blowe had been successfully performing personnel security duties since 2008, Ms. Evans emailed Mr. Woronka in 2010 and falsely stated that Ms. Blowe had limited experience performing personnel security duties to attempt to justify the removal of her duties.

16.     When Ms. Blowe asked Ms. Evans if she could perform workforce planning duties, Ms. Evans told her she could not do so because that was GS-14 level work and Ms. Blowe was not eligible to be promoted to GS-14.  In contrast, Maya Robinson (approximately 35 years old), a GS-9 level employee whose position capped out at GS-12, performed retirement work at the GS-13 level, and was eventually placed in charge of all retirement work for three months.  When performing her retirement work, Ms. Robinson did not have a pending EEO case against Ms. Evans.  In addition, Ms. Evans allowed Adele Norton (Caucasian female, approximately 25 years old) to work on workforce planning.  Ms. Norton also did not have an EEO complaint pending at that time.

**Denial of Requests for Training**

17.    Ms. Blowe submitted a request to attend an evaluator training program conducted by OPM at no cost to the Agency on April 23, 2009, and Ms. Evans consulted with Ms. Wise-Benz to decide if Ms. Blowe should attend the program.   Ms. Wise-Benz did not have any actual knowledge of what Ms. Blowe would learn from the training.   Although Mr. Woronka approved her attendance at the training, Ms. Evans denied Ms. Blowe the ability to attend the training, and did so without any knowledge of what Ms. Blowe planned and/or intended to learn from the training.   At the time Ms. Blowe sought training, an accountability review was three years away. Ms. Evans instead suggested that the Agency would pay for Ms. Blowe to take an $850 course at the U.S. Department of Agriculture ("USDA") Graduate School, even though this course was remedial in nature and not relevant to Ms. Blowe's current and planned future skill sets.

18.    A competency team training meeting was scheduled for September 23, 2009, and Training Officers were invited to attend.   Ms. Blowe wanted to attend the $1,000 training because she believed she could make valuable contributions to the meeting and enhance her skills, which would add value to the Agency through her attendance and bridge the skill gaps of OSMRE's workforce.   Ms. Evans denied her request and decided to send only Ms. Wise-Benz to the training.   Ms. Evans stated that the Agency did not have the funds to send an additional person to the meeting.   Permitting Ms. Blowe to attend the conference also would have greatly assisted her work on the competencies project assigned by Ms. Evans, and Ms. Wise-Benz was not assigned to work on the project.

19.    Ms. Blowe requested to attend an Interior Department training committee meeting in Phoenix, AZ, from October 14-15, 2009.   Ms. Evans told her that there was not enough money in the travel budget to allow her to attend the meeting.   Within a week of the training, Ms. Evans

approached Ms. Blowe and gave her permission to attend because she found money. However, Ms. Blowe was unable to attend because Ms. Evan's intentional short notice left her unprepared and she had made alternative plans due to the original denial.

20.     On or about November 2, 2009, Ms. Blowe asked to attend another DOI Learning Management Institute Project Core Team meeting scheduled for November 16-20, 2009 in Phoenix, AZ. Ms. Evans informed her that she could not attend. Ms. Blowe was suspicious of Ms. Evans' excuse because she had previously found travel money for her to attend the October 2009 meeting. Since that money was unused, it was illogical for Ms. Evans to claim that the travel budget prevented her attendance at the November 2009 meeting.

21.     In March 2010, Ms. Blowe was invited to attend the Human Capital Summit due to her membership in the Interior Training Director Council. The subject matter of the Human Capital Summit dealt directly with programs on which Ms. Blowe worked. Ms. Wise-Benz was not invited to the Human Capital Summit. Ms. Evans declared Ms. Blowe should not attend the Human Capital Summit and arranged for Ms. Wise-Benz to attend instead. Mr. Woronka disagreed with Ms. Evans and believed that Ms. Blowe should attend the Human Capital Summit and allowed her to go to the Human Capital Summit in his place. In addition, OSMRE's Deputy Director, Glenda Owens, had knowledge of Ms. Evans' attempt to replace Ms. Blowe with Ms. Wise-Benz at the Human Capital Summit, but declined to take any action to correct Ms. Evans' acts.

**Denial of Promotion to GS-14 Deputy Ethics Counselor**

22.     From January 2007 through February 2008, and again from November 2009 through May 2010, the position of Ethics Counselor in OSMRE was vacant, and Ms. Blowe performed these duties as Acting Ethics Counselor. As OSM's Acting Ethics Counselor, she was responsible for

the planning, administration, and implementation of the Agency's Ethics Program and for ensuring that it was executed in accordance with applicable ethics regulations and statutes, with emphasis on conflict-of-interest analyses of employees' outside activities and official duties. Ms. Blowe was also responsible for effectively communicating the ethics and compliance standards and procedures to all employees, through training programs and publications; providing guidance to senior managers on all ethics, business conduct and compliance matters and their impact on organizational effectiveness and business success; researching and providing advice and guidance to management and employees on various ethics issues to ensure they remained free of conflicts of interest; conducting reviews of the State ethics programs to evaluate effectiveness and adherences to statutes and regulations of OSMRE and Department policies; and coordinating the planning, development and implementation of ethics training activities. Ms. Blowe was responsible for researching applicable Federal laws, regulations, precedents, policies (i.e. Code of Federal Regulation, U.S. Code, Departmental Policies and Ethics Guide) and Surface Mining Reclamation Control Act of 1977 ("SMRCA") pertaining to ethics and conflicts-of-interest issues; was responsible for the Agency confidential reporting of federal employees, State Commissioners and other stakeholders to disclose financial information; reviewed over 400 Confidential Financial Disclosure Reports, OGE 450, OGE 450A, DI-1993 and OSM-23 for conflict of interests; consulted with employees when there was a potential conflict of interest; provided various options to employees to eliminate the conflict (i.e., recusal, certificate divestiture, sell, and etc.); prepared confidential financial reports to the top executives and the Department on status of overdue mandatory confidential financial forms;  briefed the Human Resources Director and the Assistant Deputy Finance and Administration Director on the status of filing and conflict of interest issues; served as the expert and represented OSMRE on

Department-wide monthly ethics meetings; consulted closely with the cognizant staff functions, Legal, Internal Auditing, and Human Resources; and determined the appropriateness of Agency-wide compliance initiatives and provided guidance and oversight to ensure development and implementation of strategies, policies and programs.  She performed all activities relating to standards of conduct, and ethical relationships with customers, contractors, suppliers, employees, shareholders and State Regulatory Authorities; effectively communicated ethics and compliance standards and procedures to all employees and other stakeholders through training programs and publications; and communicated with the Office of Solicitor and Office of Inspector General regarding confidential financial disclosure reports and/or ethics issues.  During periods she served as the Deputy Ethics Counselor, Ms. Blowe was rated as "Superior" in her performance appraisals.  Ms. Blowe has an Associate's and a Bachelor's Degree in Business Administration from Strayer University.  At the time of her non-selection, she had completed twelve credit hours towards a Master's Degree in Public Administration from George Mason University.

23.     In early 2010, the Secretary issued an order directing every bureau to have a full-time Deputy Ethics Counselor position at the GS-14 grade.  The Secretary denied OSMRE's request to be exempted from the mandate due to its status as the Agency's smallest bureau.

24.     On or around March 5, 2010, OSMRE opened the vacancy for the GS-14 Deputy Ethics Counselor position.  The major duties of the position included developing, revising, and interpreting OSMRE ethics policy and procedures in compliance with SMCRA and government-wide ethics laws and regulations; coordinating the ethics program by establishing procedures and systems; preparing reports and providing advice on complex issues; reviewing the disclosure forms of Agency officials and other financial disclosure filers, advising employees on conflicts of interest and necessary recusals; overseeing the annual ethics training program for OSMRE

employees and providing training to senior officials and other employees; keeping OSMRE employees advised on the latest developments in ethics laws, regulations, and policies; and serving as the initial point of contact for the Office of Inspector General cases and referrals.  Ms. Blowe had been performing all these duties as the Acting Ethics Counselor.

25.    To qualify for the position of GS-14 Deputy Ethics Counselor, the applicants were required to have one year of specialized experience, defined as experience which has provided the applicant with experience coordinating and ethics program, reviewing disclosure forms, and advising on conflicts of interest, identifying deficiencies in the ethics program and taking necessary steps to rectify.  There was no educational requirement for the position.

26.    The Position Description created on March 5, 2010, reflects that the Deputy Ethics Counselor was to serve in the Finance & Administration Division ("F&A") of OSMRE.  The position reported to, and the selecting official was the Assistant Director for F&A, Ted Woronka.

27.    Four candidates were selected for an interview: Ms. Blowe, Craig Clark (Caucasian male, 32 years old), Rosanne Kurwitz, and Matthew Fox.  Mr. Clark is an attorney and previously served as an Ethics Counselor in the U.S. Marine Corps.

28.    Mr. Woronka and Kim Hintz (Caucasian female, 45 years old) interviewed, scored, and ranked the candidates.  Both Mr. Woronka and Ms. Hintz ranked Ms. Blowe first with a score of 24 and Mr. Clark second with a score of 23.  Ms. Hintz informed Mr. Woronka that she wished to select Ms. Blowe because of her knowledge of OSMRE's mission, organization, and structure, and because Ms. Blowe had routinely worked with employees of OSMRE and established relationships and trust.  Mr. Woronka informed OSMRE Director Joseph Pizarchik (Caucasian male, 53 years old) and OSMRE Deputy Director Glenda Owens (African American female, 58 years old) that the panel had selected Ms. Blowe for the position.  Mr. Woronka explained to Mr.

Pizarchik and Ms. Owens that they were recommending Ms. Blowe based on her experience and because she had acted as the Ethics Counselor previously and had managed the program, had knowledge of the program, had more inside experience and a strong training background, and had headed the executive development program at the time she was acting as the Ethics Counselor.

29.     Ms. Hintz and Mr. Woronka both congratulated Ms. Blowe on being selected for the position.

30.     Immediately after receiving the results of the interview, Mr. Pizarchik took control of the selection process.  Based on Mr. Woronka's explanation, Mr. Pizarchik decided to move the position under the Director's Office.

31.     The selecting official for a position is the individual in whose office the position will be located.  A Position Description defines the office in which the position is to be located.  A Position Description must be certified by the agency official who makes the classification/job grading decision.  The Agency never issued a new Position Description reflecting that the position was placed under the Director's Office.  It is a violation of the law to change the reporting authority after the selection is made.  Furthermore, an employee cannot be reassigned until he/she has been in a new position for ninety days.

32.     Mr. Pizarchik and Ms. Owens reinterviewed Ms. Blowe and Mr. Clark.  It was highly atypical for Ms. Owens to be involved in a GS-14 selection for the Agency when the position is not under her Directorate.  Mr. Pizarchik and Ms. Owens interviewed Ms. Blowe in person; however, Ms. Owens was not present in Mr. Clark's interview and participated by phone.  Mr. Pizarchik asked the candidates whether they had an arrest record and whether they paid their

taxes on time.   These are not proper questions for an interview.   Ms. Owens served as the selecting official and selected Mr. Clark.

**False and Unreasonable FY 2010 Performance Evaluation**

33.     On November 19, 2010, Ms. Evans gave Ms. Blowe a Superior rating (a numerical rating of 4), instead of the highest rating available, Exceptional, for her fiscal year ("FY") 2010 performance evaluation, even though Ms. Blowe performed substantially more work than she had in FY2009, and her FY2009 performance evaluation was Superior.   During FY 2010, Ms. Blowe took on additional duties in the form of overseeing worker's compensation and developing competencies.   Additionally, during FY 2010, Ms. Blowe temporarily acquired the ethics program, which was outside of her normal duty responsibilities.   For each of the additional duties Ms. Blowe performed in 2010, she performed them in stellar fashion.   Her performance in 2010 warranted the highest possible rating of Exceptional.

34.     For FY 2010, Deborah McDonald (African-American female) and Brenda Garrett-Freeman (African American female) each received Exceptional ratings.   For FY 2010, Ms. Blowe performed equally as well as or better than Ms. McDonald and Ms. Garrett-Freeman.   At the time FY 2010 evaluations were issued, neither Ms. McDonald nor Ms. Garrett-Freeman had EEO cases pending against Ms. Evans.

35.     Ms. Blowe appealed her FY 2010 rating with Mr. Woronka.   Mr. Woronka reviewed the rating issued by Ms. Evans and overruled Ms. Evans' evaluation of Ms. Blowe and changed her rating to an Exceptional rating, the highest level (numerical value of 4.6) based on his own analysis.

36.     Mr. Woronka admitted, in sworn deposition testimony, that he believes Ms. Evans subjected Ms. Blowe to a hostile work environment.

**Other Preferential Treatment of Non-Protected Employees**

37.     In 2010, when Ms. Wise-Benz was required to send out a severance pay memoranda to Agency employees, she made mistakes in the amount of severance pay offered.  Ms. Evans quickly operated to have an African-American employee, Ms. McDonald, fix the mistakes.  Ms. Evans ensured that Ms. Wise-Benz's mistakes were never made public.  When the same African-American employee, Ms. McDonald, made mistakes with monetary awards, the mistakes were publicly announced to the entire HR staff during a meeting, embarrassing Ms. McDonald.

<u>**Count I**</u>
**Violation of Title VII of the Civil Rights Act of 1964, as amended**
**42 U.S.C. § 2000e** *et seq.*
*Race and Sex Discrimination*

38.     Plaintiff incorporates by reference paragraphs 1 through 37 as if fully stated herein.

39.     Title VII of the Civil Rights Act of 1964 states that it is an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race or sex.  A hostile work environment is a form of prohibited employment discrimination where the employee is subjected to a work environment permeated with hostility and humiliation that substantially alters the work environment.

40.     At all pertinent times, the Defendant was an employer subject to provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

41.     At all pertinent times, Plaintiff was an employee entitled to protection under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

42.     In violation of Title VII of the Civil Right Act of 1964, 42 U.S.C. § 2000e *et seq.*, Defendant knowingly and intentionally subjected Plaintiff to discrimination and created a hostile

work environment based on her race and sex by providing false and misleading information on her desk audit review; removing her duties to cause her to stay at a lower grade level; giving her non-protected colleagues credit for her work; denying her an increase to GS-14; denying her training; issuing her a lowered and/or inaccurate FY 2010 performance evaluation; and not selecting her for the position of Deputy Ethics Counselor, GS-14.

43.     As a result of such acts, Plaintiff has suffered damages.

**Count II**
**Violation of Title VII of the Civil Rights Act of 1964, as amended**
**42 U.S.C. § 2000e** *et seq.*
*Retaliation*

44.     Plaintiff incorporates by reference paragraphs 1 through 43 as if fully stated herein.

45.     Title VII of the Civil Rights Act of 1964 states that it is an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because such individual filed a complaint of discrimination.  A hostile work environment is a form of prohibited employment discrimination where the employee is subjected to a work environment permeated with hostility and humiliation that substantially alters the work environment.

46.     At all pertinent times, the Defendant was an employer subject to provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.

47.     At all pertinent times, Plaintiff was an employee entitled to protection under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.

48.     In violation of Title VII of the Civil Right Act of 1964, 42 U.S.C. § 2000e *et seq*., Defendant knowingly and intentionally subjected Plaintiff to retaliation and created a retaliatory hostile work environment because she filed complaints of discrimination by providing false and

14

misleading information on her desk audit review; removing her duties to cause her to stay at a

lower grade level; giving her non-protected colleagues credit for her work; denying her an

increase to GS-14; denying her training; issuing her a lowered and/or inaccurate FY 2010

performance evaluation; and not selecting her for the Deputy Ethics Counselor position.

49.     As a result of such acts, Plaintiff has suffered damages.

**Count III**
**Violation of the Age Discrimination in Employment Act**
**29 U.S.C. § 633a**
*Age Discrimination*

50.     Plaintiff incorporates by reference paragraphs 1 through 49 as if fully stated herein.

51.     The Age Discrimination in Employment Act, 29 U.S.C. § 633a, provides that, in

executive agencies of the United States, all personnel actions affecting employees or applicants

for employment who are at least 40 years of age shall be free from discrimination based on age.

52.     At all pertinent times, the Defendant was an employer subject to provisions of the Age

Discrimination in Employment Act, 29 U.S.C. § 633a.

53.     At all pertinent times, Plaintiff was an employee entitled to protection under the Age

Discrimination in Employment Act, 29 U.S.C. § 633a.

54.     In violation of the Age Discrimination in Employment Act, 29 U.S.C. § 633a, Defendant

knowingly and intentionally subjected Plaintiff to discrimination and created a hostile work

environment based on her age by providing false and misleading information on her desk audit

review; removing her duties to cause her to stay at a lower grade level; giving her non-protected

colleagues credit for her work; denying her an increase to GS-14; denying her training; issuing

her a lowered and/or inaccurate FY 2010 performance evaluation; and not selecting her for the

position of Deputy Ethics Counselor, GS-14.

55.     As a result of such acts, Plaintiff has suffered damages.

## Prayer for Relief

Wherefore, Plaintiff prays as follows:

A.  Issue a declaratory judgment that Defendant's practices toward Plaintiff were violative of her rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*., and the Age Discrimination in Employment Act, 29 U.S.C. § 633a;

B.  Enjoin Defendant from discriminating against employees who report discriminatory practices under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.;

C.  Award Plaintiff damages, including back pay and front pay and all lost benefits, and compensatory damages for emotional distress and hardship created by the Defendant's discrimination and retaliation;

D.  Award payment of all fees, costs, expenses, including attorneys' fees and expert fees;

E.  Award Plaintiff such other relief as to which she may be deemed entitled.

## Jury Trial Demand

Plaintiff demands a jury trial on all counts so triable.

Respectfully submitted,


_____*/s/*_____
David A. Branch #438764
Law Office of David A. Branch &
Associates, PLLC
1828 L Street NW, Suite 820
Washington, DC 20036
(202) 785-2805 phone
(202) 785-0289 fax
davidbranch@dbranchlaw.com